**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080 (BRM)(LDW)** |
| | **MDL No. 3080** |
| **THIS DOCUMENT RELATES TO:** | **OPINION** |
| *Class Action Track* | |
| Case No. 2:23-cv-20932 | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are two Motions to Dismiss. The first motion is Defendants Eli Lilly and Company ("Eli Lilly"), Novo Nordisk Inc. ("Novo Nordisk"), and Sanofi-Aventis U.S. LLC's ("Sanofi") (together, "Manufacturer Defendants") Motion to Dismiss Plaintiffs Local No. 1 Health Fund and Plan of Benefits for the Local No. 1 Health Fund's (together "Local 1") and Local 837 Health and Welfare Plan's ("Local 837")[1] (together, the "TPP Plaintiffs"), and FWK Holdings, LLC's ("FWK"), Professional Drug Company, Inc.'s ("PDC"), and RDC Liquidating Trust's ("RLT") (together, the "DP Plaintiffs") (collectively, the TPP Plaintiffs and DP Plaintiffs are referred to as "Class Track Plaintiffs") First Amended Consolidated Class Action Complaint ("FAC"). (ECF No. 44.)[2] The second motion is Defendants Evernorth Health Inc., Express Scripts,

---

[1] Prior to the issuance of this Opinion, Local 837 voluntarily dismissed all its individual claims against Defendants, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (ECF No. 65.) Therefore, "TPP Plaintiffs" refers to Local 1 in this Opinion.

[2] The Court will use the citations on the Lead Class Action docket (Dkt. No. 2:23-cv-20932) unless otherwise indicated.

Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., and Ascent Health Services LLC (together, "Express Scripts"); CVS Health Corporation, Caremark Rx, LLC, Caremark PCS Health, LLC, Caremark, LLC, and Zinc Health Services, LLC (together, "CVS Caremark"); and UnitedHealth Group Incorporated, Optum, Inc., OptumRx Inc., OptumInsight, Inc., and Emisar Pharma Services LLC (together, "OptumRx") (collectively, "PBM Defendants") Motion to Dismiss Class Track Plaintiffs' FAC. (ECF No. 45.) Class Track Plaintiffs, on behalf of themselves and all others similarly situated, opposed the Manufacturer Defendants and the PBM Defendants' Motions in a single opposition brief. (ECF No. 47.) The Manufacturer Defendants (ECF No. 48) and the PBM Defendants (ECF No. 49) both replied.

Having reviewed and considered the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motions to Dismiss (ECF Nos. 44, 45) are **GRANTED IN PART** and **DENIED IN PART**.

I.    BACKGROUND

A.  Factual History[3]

For the purpose of these Motions to Dismiss, the Court accepts the factual allegations in the FAC as true and draws all inferences in the light most favorable to the Class Track Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194,

---

[3] The Court assumes the parties' familiarity with the factual and procedural history of this matter and therefore only includes the facts and procedural history necessary to decide this Motion.

1220 (1st Cir. 1996)).

This action arises out of Plaintiffs' challenge to Defendants' allegedly unfair and unconscionable pricing scheme for their analog insulin products (the "Insulin Pricing Scheme"). There are three groups of plaintiffs: (1) the Class Track Plaintiffs, (2) the Self-Funded Payers Track Plaintiffs, and (3) the State Attorneys General (collectively, "Plaintiffs"). (ECF No. 17.) Consistent with the Court's categorization in this MDL, Class Track Plaintiffs generally categorize each defendant into one of two groups: Manufacturer Defendants or PBM Defendants (collectively, "Defendants"). (*Id.* at 1–2.) Class Track Plaintiffs contend Manufacturer Defendants, who manufacture the vast majority of insulins and other diabetic medications available in the United States, worked together to artificially and willingly raise their list prices of insulin medications, and then paid an undisclosed portion of that price back to the PBM Defendants in order to gain formulary preference. (*Id.* ¶¶ 3–5, 11–13, 15, 18–19.) Class Track Plaintiffs allege that over the relevant time period, Manufacturer Defendants often raised prices "in lockstep," despite the fact that the cost to produce these drugs decreased during the same time period. (*Id.* ¶¶ 15–16, 20–21, 298.)

PBM Defendants are pharmacy benefit managers ("PBMs"), or third-party administrators that negotiate drug costs and payments between health insurance providers and drug manufacturers. (*Id.* ¶¶ 1, 6, 8–10.) Drug manufacturers set the list prices for their prescription drugs, including insulin. (*Id.* ¶ 5.) Here, Class Track Plaintiffs allege Manufacturer Defendants engaged in an unfair and unconscionable pricing scheme by artificially inflating the list prices for their insulin products so that they could offer rebates as a secret manufacturer payment to PBM

Defendants in exchange for preferred formulary[4] placements, which Class Track Plaintiffs contend caused them to overpay for insulin products. (*Id.* ¶¶ 11–15, 19–20, 25, 30, 172, 196, 337–38.)

Class Track Plaintiffs also bring allegations regarding GLP-1s, which are non-insulin medications that can help control insulin levels. (*Id.* ¶ 331.) Class Track Plaintiffs allege Manufacturer Defendants "negotiate rebates and other fees with the PBM Defendants by offering 'bundles' of GLP-1 drugs with insulin" in a practice known as "bundling." (*Id.* ¶ 333.) In this "bundling" practice, "the Manufacturer Defendants package both insulin and GLP-1 drugs as a single class of diabetes medications." (*Id.*) "Manufacturer Defendants engage in this 'bundling' practice in order to gain formulary access for multiple drugs in exchange for increased manufacturer payments to the PBMs." (*Id.* ¶ 334.)

### B. Procedural History

On August 28, 2024, this Court established the Class Action Track within the *Insulin Pricing Litigation* multidistrict litigation ("MDL"), 2:23-md-03080. (Case Mgmt. Order No. 12, ECF No. 266.) In doing so, the Court consolidated *In re Direct Purchaser Insulin Pricing Litigation*, Civ. A. No. 2:20-cv-03426, *Local 837 Health and Welfare Plan v. Eli Lilly & Company*, Civ. A. No. 2:23-cv-20932, and *Local No. 1 Health Fund and Plan of Benefits for the Local No.1 Health Fund v. Eli Lilly & Company*, 2:23-cv-21160. (Dkt. No. 23-md-03080, ECF No. 266.)

Pursuant to this Court's September 27, 2024, MDL text order (Dkt. No. 23-md-03080, ECF No. 292), Class Track Plaintiffs filed an Amended Consolidated Class Action Complaint on October 4, 2024 (Dkt. No. 23-md-03080, ECF No. 302; ECF No. 11). On December 16, 2024,

---

[4] Formularies are a ranked list of approved drugs that an insurance plan will cover. (ECF No. 17 ¶¶ 6–7.) Drug manufacturers offer rebates (and other incentives) to PBMs to gain formulary access for their prescription drugs because they recognize that PBM formularies drive drug utilization. (*Id.* ¶¶ 12–13, 19, 158.)

Class Track Plaintiffs filed the FAC. (ECF No. 17.) The FAC added RLT as a named plaintiff as well as two additional alleged predicate acts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961. (ECF No. 17 at 2 n.3.) The parties agreed to, and the Court approved, a briefing schedule allowing motions to dismiss the FAC to be served by January 27, 2025, oppositions to be served by February 24, 2025, and replies to be served by March 24, 2025. (ECF No. 21.) On March 27, 2025, once the motions were fully briefed, the parties filed their papers to the Class Action docket. (ECF Nos. 44–49.) Manufacturer Defendants filed their Motion to Dismiss the FAC (ECF No. 44), PBM Defendants filed their Motion to Dismiss the FAC (ECF No. 45), Class Action Plaintiffs filed their Opposition (ECF No. 47), and Defendants filed their Replies (ECF No. 48; ECF No. 49).

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after Iqbal, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme

6

Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### B.  Federal Rule of Civil Procedure 9(b)

Pursuant to Federal Rule of Civil Procedure 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake, although intent, knowledge, and other conditions of a person's mind may be alleged generally." *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (internal quotation marks and citations omitted). Accordingly, "a party must plead [its] claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged.'" *U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 557).

### III.  DECISION

### A.  Timeliness of TPP Plaintiffs' and RLT's Claims

Defendants assert all of TPP Plaintiffs' and RLT's claims should be dismissed as untimely

because they were on notice of their claims more than four years prior to bringing suit, barring their claims, all of which are subject to a four-year statute of limitations. (ECF No. 44-2 at 10–16, 24–25; ECF No. 46 at 14–19.) Defendants further assert TPP Plaintiffs' and RLT's claims cannot be saved through any tolling doctrine. (ECF No. 44-2 at 16–24; ECF No. 46 at 19 –23.)

However, Defendants' timeliness arguments are moot. After the parties filed all of their papers pertaining to these Motions, this Court, recognizing the statute of limitations issue affected all Plaintiffs across all tracks in the *In re Insulin Pricing Litigation* (Dkt. No. 2:23-md-3080), accepted supplemental briefing from all parties and heard oral argument regarding the issue of constructive notice. (*See* Dkt. No. 2:23-md-3080, ECF Nos. 533–38; 563–65; 568, 569; 643, 666, 667.) As determined by this Court, the date of constructive notice for all Plaintiffs is January 14, 2021. (*See* Dkt. No. 2:23-md-3080, ECF Nos. 706–07.) Because TPP Plaintiffs and RLT filed within four years of this date (October 5, 2023 (*see* ECF No. 1); December 16, 2024 (*see* ECF No. 17)); *see also* ECF No. 44-2 at 10 ("TPP Plaintiffs initially sued in October 2023."); ECF No. 47 at 23 n.9 ("The first TPP Plaintiffs' complaint was filed on October 5, 2023."); ECF No. 44-2 at 24–25 ("RLT[] . . . appeared as a Plaintiff in the Amended Complaint . . . in December 2024."); ECF No. 46 at 18 ("RDC Liquidating Trust filed its operative claims in December 2024.")), TPP Plaintiffs' and RLT's RICO claims[5] are timely and not barred by any applicable statute of limitations.[6]

_____

[5] Manufacturer Defendants also argue TPP Plaintiffs' and RLT's RPA claims are time-barred. (ECF No. 44-2 at 11, 24–25.) However, because the Court finds TPP Plaintiffs' and RLT's RPA claims must be dismissed (*see infra* Sections III.C.1, III.C.2), the Court need not address this argument.

[6] This decision is not impacted by Case Management Order # 23 ("CMO # 23"), entered on November 12, 2025. (Dkt. No. 2:23-md-3080, ECF No. 798.) CMO # 23 sets forth processes related to (1) "Defendants' Proposed Untimely Cases and Claims List," which "does not identify . . . any federal claims asserted in any case in the Class Action Track," (2) disputed statutes of limitations, and (3) future plaintiffs. (*Id.*)

### B. RICO Claims

#### 1. TPP Plaintiffs

Defendants argue the indirect purchaser rule bars TPP Plaintiffs' RICO claims. (ECF No. 44-2 at 25–28; ECF No. 46 at 10–14.) Manufacturer Defendants assert "TPP Plaintiffs do not purchase insulin directly from Manufacturers" (ECF No. 44-2 at 26), and PBM Defendants argue TPP Plaintiffs "do not directly purchase insulin products from anyone" (ECF No. 46 at 11). Moreover, Manufacturer Defendants contend "TPP Plaintiffs reimburse amounts their beneficiaries owe to pharmacies, placing TPP Plaintiffs behind consumers in the reimbursement chain." (ECF No. 44-2 at 28; *see also* ECF No. 46 at 13 ("Health Plan Plaintiffs reimburse the PBMs for part of the cost of the prescription drugs after patients fill their insulin prescriptions at a mail-order pharmacy.").) Further, Manufacturer Defendants argue the co-conspirator exception to the indirect purchaser rule does not apply. (*Id.* at 28–33.) In response, TPP Plaintiffs argue they are direct purchasers. (ECF No. 47 at 30–33.) They assert "TPP Plaintiffs are not downstream of their beneficiaries, and they don't reimburse them for Insulin Drugs already purchased." (*Id.* at 31.) Instead, they argue "the TPP Plaintiffs and their plan member patients each purchased the Insulin Drugs directly" from the PBM Defendants' mail order pharmacies. (*Id.* at 30–32.) Finally, TPP Plaintiffs argue their "RICO claim against the Manufacturer Defendants falls squarely within the co-conspirator exception to the indirect purchaser rule." (*Id.* at 34.)

The Supreme Court developed the indirect purchaser rule in the antitrust context when it held that Clayton Act plaintiffs may not demonstrate injury by providing evidence only of indirect purchases. *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 737 (1977). The Court warned that allowing indirect purchasers to recover under such a theory "would transform treble-damages actions into massive multiparty litigations involving many levels of distribution and including large classes of

ultimate consumers remote from the defendant." *Id.* at 740. Moreover, the indirect purchaser rule was also intended to prevent defendants from being exposed to "multiple liability" should both indirect and direct purchasers in a distribution chain be permitted to assert claims arising out of a single overcharge. *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 851 (3d Cir. 1996); *Fiala v. B&B Enters.*, 738 F.3d 847, 851 (7th Cir. 2013); *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 749 (9th Cir. 2012). Because 18 U.S.C. § 1964(c), RICO's private cause of action, was modeled on the Clayton Act, "antitrust standing principles apply equally to allegations of RICO violations." *McCarthy*, 80 F.3d at 855; *Fiala*, 738 F.3d at 851.

More recently, the Third Circuit reiterated *McCarthy*'s holding in *Humana, Inc. v. Indivior, Inc.*, Civ. A. No. 21-2573, 2022 WL 17718342, at *1 (3d Cir. Dec. 15, 2022), wherein plaintiffs, who were health benefit program insurers, brought RICO claims against defendants, alleging they fraudulently induced them to include a certain prescription drug on their formulary. The district court dismissed plaintiffs' complaints "because [plaintiffs] merely reimbursed the purchase of [the prescription drug], they were indirect purchasers of the drug and therefore lacked standing under the indirect-purchaser rule, first articulated in [*Illinois Brick*], and subsequently applied by [the Third Circuit] to RICO cases in [*McCarthy*]." *Id.* The Third Circuit affirmed the decision of the district court, concluding insurers who merely reimbursed prescriptions for a drug were indirect purchasers and therefore lacked RICO standing. *Id.* at *2–3.

"When determining whether a plaintiff and defendant are involved in a direct purchaser/seller relationship, courts look to the 'economic substance of the transaction,' rather than the physical attributes of the transaction or the geographical movement of goods and services." *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 500 (D.N.J. 2014); *Spinner Consulting LLC v. Stone Point Cap. LLC*, 623 B.R. 671, 676 ("In assessing whether a plaintiff is

a direct purchaser, courts examine the 'economic substance of the transaction.'" (citation omitted)), *aff'd*, 843 F. App'x 411 (2d Cir. 2021). For example, the court in *Howard Hess* "found that, although the defendant manufacturer shipped goods directly to the plaintiff, the purchase was nevertheless 'indirect'; the direct purchaser was the intermediate dealer, not plaintiff, who received the goods. The direct shipment of goods did 'not affect the economic substance of the transaction.'" *Id.* at 500–01 (quoting *Howard Hess*, 424 F.3d at 373). Thereafter, in *Warren General Hospital v. Amgen Inc.*, 643 F.3d 77 (3d Cir. 2011), wherein the plaintiff-hospital sought to represent a class of entities that purchased pharmaceutical drugs manufactured and sold by Amgen, though the complaint did not set forth the mechanics of the drug purchases, "at the motion to dismiss stage, it became clear that Warren General Hospital in practice purchases Amgen's drugs through an independent middleman wholesaler known as AmerisourceBergen." 643 F.3d at 82. Therefore, "to determine whether plaintiff is a direct purchaser, the court must look to the 'economic substance' of the transaction." *Animal Sci. Prods.*, 34 F. Supp. 3d at 502; *Spinner*, 623 B.R. 676.

However, in *Illinois Brick*, the Court alluded to an exception to its bright-line rule—"[a]n indirect purchaser may sue if it can establish that the actual direct purchaser, the middleman, has entered into a price-fixing conspiracy with the manufacturer, thus rendering the direct purchaser a 'co-conspirator.'" *Id.* at 505. The Third Circuit again considered the co-conspirator exception in *McCarthy*, 80 F.3d at 854. The Third Circuit ultimately declined to apply the co-conspirator exception in that case, noting "[i]n order to fall within the exception, plaintiffs here would have to allege that the intermediaries immediately upstream . . . colluded with the defendants to overcharge plaintiffs . . . [and] plaintiffs would be obliged to join the [co-conspirators] as defendants, which they have not done." *Id.* The Third Circuit again considered the co-conspirator in *Howard Hess*, finding the co-conspirator exception could apply because plaintiffs alleged "they made purchases

from [defendant]'s dealers (the intermediaries immediately upstream from Plaintiffs) and that [defendant] and its dealers are co-conspirators." 424 F.3d at 376–77; *In re Deere & Co. Repair Serv. Antitrust Litig.*, 703 F. Supp. 3d 862, 881–82 (N.D. Ill. 2023). The Court noted plaintiff would not be able to recover from the two non-joined dealers because the Court "has expressly refused to adopt a co-conspirator exception when the alleged co-conspirators immediately upstream have not been joined." *Id.* at 377 n.8.

Here, TPP Plaintiffs allege "for retail pharmacy channels, branded prescription drugs are distributed from manufacturer to wholesaler, wholesaler to retail pharmacy, and retailer to patient," and "[f]or mail order pharmacies, . . . branded prescription drugs are distributed from the manufacturer to the mail order pharmacies." (ECF No. 17 ¶ 149.) TPP Plaintiffs further allege "PBM mail order pharmacies sell . . . drugs *to customers* who fill and pay (along with their health plan)" and "[t]he mail order pharmacy then ships the purchase *directly to the consumer*." (ECF No. 17 ¶ 167 (emphasis added).) TPP Plaintiffs' payments "to PBM Defendants' mail order pharmacies" are made "on behalf of" TPP Plaintiffs' beneficiaries and insured individuals. (*Id.* ¶ 154.) Such payments "cover a portion of their beneficiaries' drugs costs." (*Id.*; *see also id.* ¶ 161 ("The mail order pharmacies obtain drugs from the drug manufacturers and mail prescriptions directly to individuals covered by TPPs. TPPs then pay PBMs their negotiated payments for these drugs.").) Considering the economic substance of the transaction, TPP Plaintiffs are not direct purchasers. Pursuant to *Humana*, this "is a textbook indirect-purchaser theory: [insurer-plaintiffs] seek redress for injuries suffered because their insureds purchased [the at-issue medication] and the [insurer-plaintiffs] reimbursed those purchases." 2022 WL 17718342, at *3. Indeed, TPP Plaintiffs are further separated from Defendants than insulin consumers, who this Court previously

held are "quintessential indirect purchasers for the purposes of the indirect purchaser rule." *In re Insulin Pricing Litig.*, Civ. A. No. 3:17-cv-0699, 2019 WL 643709, at *9 (D.N.J. Feb. 15, 2019).

Moreover, even if the Court were to find the PBM Defendants' mail order pharmacies are direct purchasers, the co-conspirator exception does not save TPP Plaintiffs' RICO claims because TPP Plaintiffs are not the first purchasers who are not part of the conspiracy. *See Laumann v. Nat'l Hockey League*, 56 F. Supp. 3d 280, 294–95 (S.D.N.Y. 2014) ("[W]here intermediate purchasers in the chain of distribution . . . [are] participants in the conspiracy, the first purchasers who are not part of the conspiracy 'are entitled to collect damages from both the manufacturers and their intermediaries if conspiracy and overcharges can be established.'" (alterations in original) (citation omitted); *see also Paper Sys. Inc. v. Nippon Paper Indus. Cp.*, 281 F.3d 629, 631 (7th Cir. 2002). The distribution chain is interrupted by either a wholesaler or a patient. (See ECF No. 17 ¶¶ 149. 161, 167.)

Accordingly, because the TPP Plaintiffs are not direct purchasers and their claims fail to fall under the co-conspirator exception, Defendants' Motions to Dismiss TPP Plaintiffs' RICO claims are **GRANTED**. *See In re Insulin Pricing Litig.*, 2019 WL 643709, at *12–13 (dismissing plaintiffs' RICO claims under the indirect purchaser rule where plaintiffs "failed to allege that they directly purchased the analog insulin from Defendants. Rather, Plaintiffs claim injury by virtue of inflated prices of their downstream purchase"); *see also MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, Civ. A. No. 18-2211, 2019 WL 1418129, at *16 (D.N.J. Mar. 29, 2019) (dismissing plaintiffs' RICO claims where "Plaintiffs have failed to allege that they directly

purchased the analog insulin from Defendants, but instead claim injury by virtue of inflated prices of their downstream purchase").[7]

### 2. DP Plaintiffs

#### a. FWK and RLT

Defendants argue FWK and RLT have not shown they—as opposed to their assignors—were injured in their business or property, and therefore FWK and RLT cannot bring a RICO cause of action. (ECF No. 44-2 at 54–55; ECF No. 46 at 50–51.) For this argument, Defendants rely on a pair of unpublished cases from the Northern District of California. (ECF No. 44-2 at 54–55 (citing *MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*, Case No. 3:22-cv-07604, 2024 WL 3408221 (N.D. Cal. July 12, 2024) and *MSP Recovery Claims, Series LLC v. Jazz Pharms., PLC*, Case No. 5:23-cv-01591, 2024 WL 3511635 (N.D. Cal. July 22, 2024)); ECF No. 46 at 50–51 (same).) DP Plaintiffs respond FWK and RLT do have standing to bring their assigned RICO claims, pointing to *Lerman v. Joyce Int'l Inc.*, 10 F.3d 106 (3d Cir. 1993) and district court cases within the Third Circuit and across the country finding RICO claims assignable. (ECF No. 47 at 41–43 (collecting cases).)

As Defendants highlight, *Actelion* held "assignees who are not directly injured are unable to bring RICO claims." 2024 WL 3408221, at *14. To reach that conclusion, the *Actelion* court largely relied on the Ninth Circuit's decision in *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) (en banc). *Id.* at *13–16. But *Silvers* "analyzed the assignability of claims brought under the *Copyright Act*," and "[t]he Ninth Circuit has not ruled on whether *RICO* claims are assignable." *Jazz*, 2024 WL 3511635, at *6 (emphasis added). Indeed, district courts in the

---

[7] Because the Court finds the indirect purchaser rule bars TPP Plaintiffs' RICO claims, the Court need not address Manufacturer Defendants' argument TPP Plaintiffs' RICO claims fail as a matter of law because they do not plead a valid RICO predicate act. (*Id.* at 34–54.)

Ninth Circuit disagree as to whether assignees may bring RICO claims. *Compare Actelion Pharms.*, 2024 WL 3408221, at *14, *and Jazz Pharms.*, 2024 WL 3511635, at *6, *with MSP Recovery Claims, Series LLC v. Amgen Inc.*, Case No. 2:23-cv-03130, 2024 WL 3464410, at *9 (C.D. Cal. July 15, 2024) ("The Court does not find, at this point, that RICO claims are unassignable. . . . [T]he Court does not read *Silvers* as standing for the proposition that any private right of action conferred by federal statute is unassignable unless otherwise expressly noted."). Further demonstrating the lack of consensus among district courts in the Ninth Circuit, the *Jazz* court only found "the analysis from *Actelion* persuasive *at this time*" and stated it "will provide the [p]arties the opportunity to respond to the assignability analyses" discussed in the court's opinion "[s]hould the [p]arties dispute RICO claim assignments again in any future briefing." *Jazz Pharms.*, 2024 WL 3511635, at *6.

As this Court has previously stated, "[t]he Third Circuit has held that the assignment of any claims—including RICO claims—must be 'express' in order to be deemed valid." *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *7 (D.N.J. Mar. 29, 2019) (quoting *Lerman*, 10 F.3d at 112). District courts within the Third Circuit agree. *See Abadi v. Crown Industrials, LLC*, Civ. A. No. 18-3493, 2019 WL 3572874, at *2 (E.D. Pa. Aug. 5, 2019) ("[A]ssignment of RICO claims must be 'express.'" (quoting *Lerman*, 10 F.3d at 112)); *In re Jamuna Real Estate, LLC*, 382 B.R. 263, 269–70 (Bankr. E.D. Pa. 2008) ("A party has standing to assert claims under . . . the civil RICO statute, where it was directly harmed by the defendants' conduct, or where it receives a valid assignment from someone who has been so harmed." (citation omitted) (citing *Lerman*, 10 F.3d at 113)); *Fed. Ins. Co. v. Ayers*, 760 F. Supp. 1118, 1120 (E.D. Pa. 1990) ("As long as all the pleading requirements are met, a plaintiff may pursue a RICO claim which it acquired through an assignment."). Numerous other federal courts have found RICO

claims to be assignable as well. *See, e.g.*, *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 228 (S.D.N.Y. 1999) ("RICO claims are assignable."); *Koehler v. NationsBank Corp.*, No. 96 C 2050, 1997 WL 112836, at *2 (N.D. Ill. Mar. 10, 1997) ("[F]ederal courts have consistently held that RICO claims are assignable.").

Defendants point out the *Actelion* court reasoned "in *Lerman*, the defendant did not argue, and the Third Circuit did not address, whether RICO is assignable; instead, the defendant argued the assignment was invalid because it was not 'express' and RICO assignments cannot be partial." *Actelion Pharms.*, 2024 WL 3408221, at *16. Nevertheless, the Court is unpersuaded by the unpublished, out-of-circuit cases Defendants rely on, especially given those cases represent only one side of a split among cases in their own circuit. Instead, the Court will follow the weight of authority from this Circuit finding RICO claims may be assigned. Accordingly, Defendants' Motions to Dismiss FWK's and RLT's RICO claims for lack of a private cause of action are **DENIED**.

### b.  Mail and Wire Fraud[8]

Defendants argue DP Plaintiffs have not pleaded mail or wire fraud as a predicate act because DP Plaintiffs have not alleged fraudulent misrepresentations or omissions under Rule 9(b).

---

[8] Because the Court finds DP Plaintiffs have adequately alleged mail and wire fraud, the Court need not address DP Plaintiffs' other alleged predicate acts. *See In re Insulin Pricing Litig.*, Civ. A. No. 3:17-cv-0699, 2019 WL 643709, at *5, *13 (D.N.J. Feb. 15, 2019) (finding plaintiffs adequately plead elements of RICO claim when they pled mail and wire fraud); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, Civ. A. No. 18-2211, 2019 WL 1418129, at *11 (D.N.J. Mar. 29, 2019) (finding "Plaintiffs have adequately pled the requisite predicate acts underlying its RICO claim" when they "adequately pled mail and wire fraud"); *Absolute Power Systems, Inc. v. Cummins, Inc.*, Civ. A. No. 15-8539, 2016 WL 6897782, at *4 (D.N.J. Nov. 23, 2016) ("To adequately plead a pattern of racketeering activity, a plaintiff must allege at least two predicate acts of racketeering, which acts may include violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343."); *Grant v. Turner*, 505 F. App'x 107, 111 (3d Cir. Nov. 27, 2012) ("A pattern of racketeering activity requires a pleading of at least two predicate acts of racketeering. . . . [I]n this case, the predicate acts are mail and wire fraud . . . ." (citation omitted)).

(ECF No. 44-2 at 36–39; ECF No. 46 at 32–36.) Defendants further contend DP Plaintiffs failed to show any alleged mail or wire fraud predicate act proximately caused their injuries. (ECF No. 44-2 at 39–43; ECF No. 46 at 45–48.) DP Plaintiffs respond they have properly alleged Defendants engaged in mail and wire fraud and such fraud caused their injuries. (ECF No. 47 at 44–55, 91–92.) DP Plaintiffs point to this Court's prior decision—*In re Direct Purchaser Insulin Pricing Litigation*, Case No. 3:20-cv-3426, 2021 WL 2886216 (D.N.J. July 9, 2021)—as binding law of the case. (ECF No. 47 at 43.)

Illicit racketeering activity includes "a host of so-called predicate acts, including 'any act which is indictable under . . . Section 1341 [mail fraud].'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1961(1)(B)). The Third Circuit has traditionally interpreted mail fraud statutes broadly. *See United States v. Martinez*, 905 F.2d 709, 715 (3d Cir. 1990). Fraud is "measured in a particular case by determining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community." *United States v. Riley*, 621 F.3d 312, 327 n.19 (3d Cir. 2010) (citation omitted). However, without a specific "fraudulent statement" or allegations of "the time, place, speaker and content of the alleged misrepresentations," a civil RICO claim asserting fraud should be dismissed. *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, Civ. A. No. 15-8324, 2016 WL 7013468, at *15 (D.N.J. Nov. 30, 2016) (quoting *Briksza v. Moloney*, Civ. A. No. 08-cv-01785, 2009 WL 1767594, at *9 (N.N.J. June 19, 2009)).

This Court has previously addressed wholesalers'—including FWK and PDC—allegations regarding the predicate acts of mail and wire fraud.[9] *In re Direct Purchaser*, 2021 WL 2886216, at

---

[9] PBM Defendants argue "[Class Track] Plaintiffs' law-of-the-case theory cannot apply to the . . . *[TPP] Plaintiffs*, as they were not (and are not) parties to that case." (ECF No. 49 at 24 (emphasis added).) But this Court is not applying the law of the case doctrine to TPP Plaintiffs because the

*14–16. There, the Court found *In re EpiPen Direct Purchaser Litigation*, Civ. A. No. 20-827, 2021 WL 147166 (D. Minn. Jan. 15, 2021), and its nearly analogous factual background, to be instructive and persuasive. *In re Direct Purchaser*, 2021 WL 2886216, at *12, 14–15. The *EpiPen* court conceded the plaintiffs' allegations "generally [did] not identify specific dates and times" or set forth facts detailing "a particular false statement made on a particular occasion to a particular client about a particular EpiPen list-price increase." *In re EpiPen*, 2021 WL 147166, at *19. (further noting that the pleading deficiency inquiry was "somewhat close"). Nonetheless, the court held the plaintiffs satisfied Rule 9(b)'s heightened pleading requirement because:

> They allege[d] that the PBM Defendants represented to their clients that their interests would be aligned and that rebates would lower drug costs, and they identify specific marketing statements to that effect. They also allege[d] that [the d]efendants . . . used the mail and interstate wire facilities to transmit thousands of communications to further the scheme.

*Id.* (internal quotation marks and citations omitted).

This Court found the wholesaler plaintiffs' allegations to be no different than those in

---

Court is dismissing TPP Plaintiffs' RICO claims under the indirect purchaser rule. (*See supra* Section III.B.1.). Moreover, PBM Defendants contest Class Track Plaintiffs' law-of-the-case theory because the Court did not have the benefit of certain PBM contracts in *In re Direct Purchasers*. (ECF No. 49 at 24). But those contracts are between PBM Defendants and TPP Plaintiffs, not DP Plaintiffs. Because the Court is dismissing TPP Plaintiffs' RICO claims, the Court declines Defendants' invitation to take "a second look" at its prior ruling as to DP Plaintiffs. (*Id.*) In any event, although courts may consider any "document *integral to or explicitly relied* upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), the Court must accept the factual allegations in the Complaint as true and draw all inferences in the light most favorable to Class Track Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). And "[w]hen the truth of facts in an 'integral' document is contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Here, even if the contracts between the PBM Defendants and the TPP Plaintiffs are "integral" to DP Plaintiffs' allegations, the FAC's well-pleaded facts contest the facts Defendants argue the contracts reveal and disclose by alleging Defendants mislabel, disguise, and hide certain payments. (*See, e.g.*, ECF No. 17 ¶¶ 12, 210.) Therefore, at this stage of the litigation, the Court declines to disrupt its prior decision regarding DP Plaintiffs based on the contracts between the PBM Defendants and the TPP Plaintiffs.

*EpiPen*. The wholesaler plaintiffs had alleged the PBM Defendants "told clients, potential clients, and investors that they secured lower [drug] prices" while the "Manufacturer Defendants inflated list prices and funded the bribes and kickbacks in exchange for favorable [formulary] placement." *In re Direct Purchaser*, 2021 WL 2886216, at *15. They also alleged "Defendants' use of the U.S. mails and interstate wire facilities to perpetrate the [kickback] scheme involved thousands of communications throughout the Class Period." *Id.* Likewise, here, DP Plaintiffs allege in the FAC the PBM Defendants made "material misrepresentations . . . (including to TPP Plaintiffs, potential clients, and investors) that they secured lower [drug] prices" while the "Manufacturer Defendants were inflating list prices to fund bribes and kickbacks to PBM Defendants for favorable formulary placement." (ECF No. 17 ¶ 408.) The FAC also alleges "Defendants' use of the U.S. mails and interstate wire facilities to perpetrate the pricing scheme involved thousands of communications throughout the Class period.) (*Id.* ¶ 415.) Furthermore, the FAC alleges "Defendants knew that the list prices for the Insulin Drugs served as the basis for Plaintiffs' and Class members' payments." (*Id.* ¶ 25.) *See MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, Civ. A. No. 18-2211, 2019 WL 1418129, at *11 (D.N.J. Mar. 29, 2019) (finding plaintiffs adequately pled mail and wire fraud as predicate acts underlying RICO claim when plaintiffs alleged "Defendants knew the prices consumers ultimately paid for the analog insulin was based on the fraudulent benchmark prices Defendants published," and stating "[f]ederal courts have held that excessive inflation of prices on a published index may constitute mail and wire fraud"). Therefore, once again, at this stage of the litigation, the Court finds DP Plaintiffs have satisfied the requirements of Rule 9(b) as it relates to the mail and wire fraud predicate acts.[10]

---

[10] PBM Defendants argue Class Track Plaintiffs "do not plead anything actionable by any of the Group Purchasing Organization Defendants—Zinc Health Services, L.L.C., Ascent Health Services LLC, and Emisar Pharma Services LLC" because those entitles "came into existence

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a but for cause of [its] injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)). If a plaintiff's alleged injuries "could have resulted from factors other than [the defendants'] alleged acts of fraud," there is no proximate causation. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006).

As this Court noted in *In re Direct Purchaser*, the *EpiPen* court found the plaintiffs had plausibly alleged proximate causation, holding:

> [The defendant manufacturers'] price increases, at least according to the [c]omplaint, were not just collateral effects of the alleged bribery-and-kickback scheme. Because the EpiPen list price helped determine the amount of [the] unlawful payments to PBMs, raising the list price was itself a means that [the defendant manufacturers] use to carry out the scheme. It is therefore incorrect to say that the alleged RICO violation (a bribery-and-kickback scheme that depended on price increases) was 'entirely distinct' from the cause of [the p]laintiffs' harm (the price increases themselves).

*In re EpiPen*, 2021 WL 147166, at *22 (citing *Anza*, 547 U.S. at 458). This Court found the wholesaler plaintiffs also alleged the Manufacturer Defendants increased the list prices of the Insulin Drugs to fund the bribes and kickbacks. *In re Direct Purchaser*, 2021 WL 2886216, at *16. The same is true here. (*See, e.g.*, ECF No. 17 ¶¶ 16, 408.) Therefore, as in *In re Direct Purchaser*, at this stage of the litigation, the Court finds DP Plaintiffs have plausibly alleged the proximate causation necessary for a RICO claim.

---

between 2019 and 2021," and "the alleged misrepresentations by the PBMs . . . *occurred earlier*." (ECF No. 46 at 36 (emphasis added).) However, the Court is not persuaded because the FAC alleges "the pricing and kickback scheme *remains in effect*" and "the relevant conduct of Defendants is part of a *continuing* unlawful practice." (ECF No. 17 ¶ 360 (emphasis added).)

Defendants also argue DP Plaintiffs have not alleged reliance on any misstatements. (ECF No. 44-2 at 40–43; ECF No. 46 at 45–48.) "[W]hile first-party reliance is not a required element of a civil RICO claim (independently, or as a part of the proximate cause analysis), 'the complete absence of reliance may prevent the plaintiff from establishing proximate cause.'" *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 523–24 (D.N.J. 2011) (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008)). In *In re Direct Purchaser*, this Court found the wholesaler plaintiffs alleged reliance on the part of the United States government and the PBM Defendants' health benefit provider clients because these parties received written and oral communications from Defendants "that fraudulently misrepresented the reasons for list price increases," and these parties then "deter[red] investigations into the true nature of the list price increases" or decided against making "changes to reimbursement based on something other than list prices." *In re Direct Purchaser*, 2021 WL 2886216, at *16. Here, the FAC includes the same allegations. (ECF No. 17 ¶ 415.) Therefore, as in *In re Direct Purchaser*, the Court declines, at this stage of the litigation, to dismiss DP Plaintiffs' RICO claim on reliance grounds.[11]

### c. Affairs of an Enterprise

A valid RICO enterprise requires "defendants [to] conduct[] or participat[e] in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (quoting 18 U.S.C. § 1962(c)). PBM Defendants argue DP Plaintiffs do not allege the PBM Defendants conducted the affairs of an enterprise. (ECF No. 46 at 49.) DP Plaintiffs argue they do allege the PBM Defendants conducted the affairs of an enterprise because DP Plaintiffs "allege a

---

[11] PBM Defendants note this Court "found the law was 'unsettled' when it addressed this [reliance] issue in 2021." (ECF No. 46 at 45 (quoting *In re Direct Purchaser*, 2021 WL 2886216, at *16).) They argue "more-recent authority confirms that reliance by someone should be required." (*Id.*) However, the cases PBM Defendants cite are all unpublished. (*See id.*) Therefore, the Court is not persuaded by this argument.

common purpose for both the PBM Defendants and Manufacturer Defendants (profit), steps taken to advance that purpose that spans years (increasing WAC and then negotiating rebates and administration fees (i.e., bribes) thereby leading to more profit), all leading to massive price inflation (which harmed Plaintiffs)." (ECF No. 47 at 97.)

In *In re Direct Purchaser*, this Court found the wholesaler plaintiffs' plausibly alleged conduct of the enterprise's affairs under RICO because they "allege[d] Defendants 'engaged in a scheme . . . to corrupt the supply chain by artificially inflating list prices in exchange for preferred formulary placement, shifting the cost of bribes and kickbacks to direct purchasers of the Insulin Drugs.'" *In re Direct Purchaser*, 2021 WL 2886216, at *17. Here, the FAC contains the same allegation and requires the same treatment. (ECF No. 17 ¶ 454 ("[Defendants] engaged in a scheme . . . to corrupt the supply chain by artificially inflating list prices in exchange for preferred formulary placement, shifting the cost of the bribes and kickbacks to purchasers of the Insulin Drugs.").) Therefore, the Court again finds DP Plaintiffs plausibly allege conduct of the enterprise's affairs under RICO.[12]

### d.  Derivative Section 1962(d) Claims

Defendants argue "Plaintiffs' conspiracy claim under 18 U.S.C. § 1962(d) fails because Plaintiffs fail to plead a viable claim under section 1962(c)." (ECF No. 46 at 51; *see also* ECF No.

---

[12] PBM Defendants acknowledge this Court's finding in *In re Direct Purchaser*. (ECF No. 46 at 50 ("This Court previously denied the PBMs' motion to dismiss the Wholesaler Plaintiffs' First Amended Complaint because "bribery is a recognized means of participating in the conduct of an enterprise's affairs," and the Wholesaler Plaintiffs alleged that Defendants "shift[ed] the cost of bribes and kickbacks to direct purchasers of the Insulin Drugs." (quoting *In re Direct Purchaser*, 2021 WL 2886216, at *17)).) However, they attempt to distinguish this case because "this Court now has before it the contracts between the PBMs and the Health Plan Plaintiffs." (*Id.*) As explained above, the Court declines to depart from its prior ruling based on these contracts. *See supra* note 9.

44-2 at 34 ("[Plaintiffs'] failure to plead a non-conspiracy RICO claim means their RICO conspiracy claim fails.").) As the Court is dismissing TPP Plaintiffs' RICO claims under the indirect purchaser rule, Defendants' Motions to Dismiss TPP Plaintiffs' conspiracy claims under Section 1962(d) are **GRANTED**. However, because the Court has found DP Plaintiffs have plausibly alleged a RICO violation, Defendants' Motions to Dismiss DP Plaintiffs' RICO claims are **DENIED**.

### C. Robinson-Patman Act ("RPA") Claims

#### 1. TPP Plaintiffs

Defendants argue TPP Plaintiffs' RPA claims should also be dismissed under the indirect purchaser rule.[13] (ECF No. 44-2 at 26.) Defendants assert, and TPP Plaintiffs do not dispute, the indirect purchaser rule applies to RPA claims. (ECF No. 44-2 at 26.) The Court agrees. *See McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 847–48 (3d Cir. 1996) ("[T]he Supreme Court articulated the so-called 'direct purchaser' rule, [which is] an antitrust standing doctrine that bar[s] downstream indirect purchasers from bringing an antitrust claim." (citing *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 744 (1977)).); *id.* at 850, 851 n.14 (rejecting plaintiffs' argument the direct purchaser rule was displaced by "the multi-factor approach to antitrust standing outlined in" *Associated Gen. Contractors v. Cal. State Council of Carpenters ("AGC")*, 459 U.S. 519 (1983), and stating, "the 'direct purchaser' rule, unlike the *AGC* standard, is a bright-line rule"); *Boyd v. AWB Ltd.*, 544

---

[13] Both Manufacturer Defendants and PBM Defendants argue the indirect purchaser rule bars TPP Plaintiffs' RICO claims (ECF No. 44-2 at 25–28; ECF No. 46 at 10–14), but only Manufacturer Defendants specifically argue the indirect purchaser rule also applies to RPA claims (ECF No. 44-2 at 26.) Because the Court finds the indirect purchaser rule bars TPP Plaintiffs' RICO claims against all Defendants (*see supra* Section III.B.1), and the Court finds the indirect purchaser rule also applies to RPA claims, the Court finds the interests of judicial economy and consistency are best served by applying the indirect purchaser rule to TPP Plaintiffs' RPA claims with respect to both Manufacturer Defendants and PBM Defendants.

F.Supp.2d 236, 249–51, 250 n.15 (S.D.N.Y. 2008) (stating, in the context of an antitrust claim alleging a violation of § 2(c) of the RPA, the "plaintiffs' claimed injury . . . is significantly more indirect than the injury alleged by the plaintiffs in [*Illinois Brick*]").

Because the Court finds TPP Plaintiffs are not direct purchasers and the co-conspirator exception does not save their claims, *see supra* Section III.B.1., the Defendants' Motions to Dismiss TPP Plaintiffs' RPA claims are **GRANTED**.[14]

### 2.  DP Plaintiffs

Defendants argue DP Plaintiffs' RPA claims should be dismissed because DP Plaintiffs' do not allege antitrust injury. (ECF No. 44-2 at 56–57; ECF No. 46 at 53–54.) Defendants point to this Court's prior decision dismissing Plaintiffs FWK's and PDC's claim alleging a violation of Section 2(c) of the RPA because FWK and PDC did not plausibly allege an antitrust injury. (ECF No. 44-2 at 56–57 (citing *In re Direct Purchaser Insulin Pricing Litig.*, Case No. 3:20-cv-3426, 2021 WL 2886216, at *7–8 (D.N.J. July 9, 2021)); ECF No. 46 at 53 (same).)

DP Plaintiffs acknowledge this Court's July 2021 decision and clarify they are only bringing RPA claims to preserve them for appeal. (ECF No 17 at 197 n.164 ("[DP] plaintiffs are including their Robinson-Patman claim in this [FAC] to preserve all rights to pursue the cause of action should the Court of Appeals reverse or vacate the [July 2021] order."); ECF No. 47 at 99 n.46 ("To be clear, the . . . [DP] Plaintiffs have asserted the RPA Section 2(c) claim only to preserve it for appeal.").) Accordingly, consistent with this Court's prior decision, Defendants' Motions to Dismiss DP Plaintiffs' RPA claims are **GRANTED**.

---

[14] Therefore, the Court need not address the Defendants' additional arguments regarding TPP Plaintiffs' RPA claims (*see* ECF No. 44-2 at 57–65; ECF No. 46 52–55), or whether certain TPP Plaintiffs have standing to sue certain PBMs (*see* ECF No. 46 at 57–58).

### D. Corporate Parents and Affiliates

PBM Defendants argue Class Track Plaintiffs do not allege misconduct by certain corporate parents and affiliates—namely, CVS Health Corp.; Evernorth Health, Inc.; UnitedHealth Group Incorporated; OptumInsight, Inc.; and Optum, Inc. (ECF No. 46 at 55–56.) Moreover, they argue Class Track Plaintiffs identify no basis for piercing the corporate veil against those entities. (*Id.* at 56–57.) Class Track Plaintiffs respond they "have alleged that each corporate entity directly participated in the challenged conduct," and their "allegations do not depend on an alter-ego theory or require piercing the corporate veil." (ECF No. 47 at 39–40.) Class Track Plaintiffs also argue, in the alternative, the corporate parents may be held liable under general agency principles. (*Id.* at 40–41.)

Here, the Court finds the Class Track Plaintiffs need not pierce the corporate veil because they adequately allege direct involvement by corporate parents and affiliates. The FAC alleges CVS Health Corporation "designs pharmacy benefit plans," "negotiates with pharmaceutical companies to obtain discounted acquisition costs," and "publicly represents that it lowers the cost of the Insulin Drugs." (ECF No. 17 ¶¶ 45–49.) The FAC also alleges Evernorth Health, Inc. "is directly involved in shaping the company policies that inform its PBM services and formulary construction, including with respect to the pricing and kickback scheme for the Insulin Drugs," and "evaluat[es] drugs for efficacy, value and price to assist clients in selecting a cost-effective formulary." (*Id.* ¶¶ 72, 75.) Similarly, the FAC plausibly alleges UnitedHealth Group Incorporated; OptumInsight, Inc.; and Optum, Inc. participated in the alleged Insulin Pricing Scheme. (*See id.* ¶¶ 103–10, 118–19, 111–13.)

Accordingly, the PBM Defendants' Motion to Dismiss claims against corporate parents and affiliates is **DENIED**. *See Miss. ex rel. Fitch v. Eli Lilly and Co.*, Civ. A. No. 3:21-CV-674, 2022

WL 18401603, at *5 (S.D. Miss. Aug. 29, 2022) (finding in insulin drug price case complaint "adequately pled . . . claims against CVS Health and Evernorth" because complaint "alleged that CVS Health designed pharmacy benefit plans, negotiated with the Manufacturer Defendants, and publicly represented that it constructs programs to lower the cost of the at-issue diabetes medications" and the complaint "plausibly allege[d] that Evernorth participated in the alleged Insulin Pricing Scheme" (citations omitted).)

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED IN PART** and **DENIED IN PART.** An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  December 30, 2025