NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: INSULIN PRICING LITIGATION | Case No. 2:23-md-03080 (BRM)(LDW)<br>MDL No. 3080 |
| THIS DOCUMENT RELATES TO:<br><br>*Class Action Track*<br><br>Case No. 2:23-cv-20932[1] | OPINION<br>TEMPORARILY FILED UNDER SEAL |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss pursuant to the Federal Arbitration Act (the "Motion") filed by Defendants CVS Health Corporation, Caremark Rx LLC, Caremark, LLC, Caremark PCS Health, LLC, and Zinc Health Services, LLC (collectively, "Arbitration Defendants"). (ECF Nos. 22–23.)[2] The Motion seeks dismissal of Plaintiffs Local No. 1 Health Fund and Plan of Benefits for the Local No. 1 Health Fund's (together, "Local No. 1") claims against the Arbitration Defendants in the Amended Consolidated Class Action Complaint. (*Id.*) Local No. 1 filed an Opposition to Arbitration Defendants' Motion (ECF No. 25), and Arbitration Defendants filed a Reply (ECF No. 26). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and

---

[1] This Opinion specifically relates to *Local No. 1 Health Fund v. Eli Lilly and Company*, Dkt. No. 2:23-cv-21160, which was consolidated into the Class Action Track of this multidistrict litigation ("MDL") on August 28, 2024. (Dkt. No. 2:23-md-03080, ECF No. 266.)

[2] The Court will use the citations on the Lead Class Action docket (Dkt. No. 2:23-cv-20932) unless otherwise indicated.

for good cause having been shown, Arbitration Defendants' Motion to Dismiss pursuant to the Federal Arbitration Act is **DENIED**.

I. **BACKGROUND**

A. **Factual History**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint (ECF No. 17) as true and draws all inferences in the light most favorable to Local No. 1. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

As the factual and procedural backgrounds of this matter are well known to the parties, the Court will only address the facts pertinent to this Opinion. This action arises out of Local No. 1's challenge to Arbitration Defendants' allegedly unfair and unconscionable pricing scheme for their insulin products (the "Insulin Pricing Scheme"). (ECF No. 17.) Plaintiff Local No. 1 Health Fund is "a multi-employer plan whose stated purpose is to provide health benefits to eligible members and their dependents," and Plaintiff Plan of Benefits for the Local No. 1 Health Fund and associated plans is "the health benefit plan that the Local 1 Health Fund has sponsored from at least 2008 through the present." (*Id.* ¶¶ 31–32.) Consistent with the Court's categorization in this MDL, Local No. 1 generally categorizes defendants into one of two groups: Manufacturer

2

Defendants[3] or PBM Defendants[4] (collectively, "Defendants"). (*Id.* ¶ 1.) Local No. 1 contends Manufacturer Defendants, who manufacture the vast majority of insulins and other diabetic medications available in the United States, worked together to artificially and willingly raise their list prices of insulin medications, and then paid an undisclosed portion of that price back to the PBM Defendants in order to gain formulary preference. (*Id.* ¶¶ 3–5, 11–13, 15, 18–19.) Local No. 1 alleges that over the relevant time period, Manufacturer Defendants often raised prices "in lockstep," despite the fact that the cost to produce these drugs decreased during the same time period. (*Id.* ¶¶ 15–16, 20–21, 301.)

PBM Defendants are pharmacy benefit managers ("PBMs") or third-party administrators that negotiate drug costs and payments between health insurance providers and drug manufacturers. (*Id.* ¶¶ 1, 6–10.) Drug manufacturers set the list prices for their prescription drugs, including insulin. (*Id.* ¶ 5.) Here, Local No. 1 alleges Manufacturer Defendants engaged in an unfair and unconscionable pricing scheme by artificially inflating the list prices for their insulin products so that they could offer rebates as a secret Manufacturer Payment to PBM Defendants in exchange for preferred formulary[5] placements, which Local No. 1 contends caused it to overpay

---

[3] Manufacturer Defendants are comprised of Defendants Eli Lilly and Company ("Eli Lilly"), Novo Nordisk Inc. ("Novo Nordisk"), and Sanofi-Aventis U.S. LLC ("Sanofi") (collectively, "Manufacturer Defendants").

[4] PBM Defendants include Evernorth Health Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., and Ascent Health Services LLC (together, "Express Scripts"); CVS Health Corporation, Caremark Rx, LLC, Caremark PCS Health, LLC, Caremark, LLC, and Zinc Health Services, LLC (together, "CVS Caremark"); and UnitedHealth Group Incorporated, Optum, Inc., OptumRx Inc., OptumInsight, Inc., and Emisar Pharma Services LLC (together, OptumRx") (collectively, "PBM Defendants").

[5] Formularies are a ranked list of approved drugs that an insurance plan will cover. (ECF No. 17 ¶ 6.) Drug manufacturers offer rebates (and other incentives) to PBMs to gain formulary access

for insulin products. (*Id*. ¶¶ 11–15, 19–20, 25, 28–29.)

### B. Procedural History

On October 13, 2023, Local No. 1 filed a Complaint in the District Court for the District of New Jersey as a member case of the *Insulin Pricing Litigation* multidistrict litigation ("MDL"), 2:23-md-03080. (Dkt. No. 2:23-cv-21160, ECF No. 1.) After a request for leave to move to consolidate Local No. 1's action with that of *In re Direct Purchaser Insulin Pricing Litigation*, Civ. A. No. 2:20-03426, and *Local 837 Health and Welfare Plan v. Eli Lilly & Co.*, Civ. A. No. 2:23-20932 (together with Local No. 1, the "Class Action Track"), this Court entered Case Management Order #12, consolidating the actions under the Class Action Track on August 28, 2024. (Dkt. No. 2:23-md-03080, ECF No. 266.)

Pursuant to this Court's November 22, 2024 Order, CVS Caremark served on Local No. 1 this Motion to Dismiss their claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et al*. (the "FAA") on November 25, 2024. (Dkt. No. 2:23-md-3080, ECF No. 336.) Local No. 1 served its Opposition on January 13, 2025, and CVS Caremark served its Reply on February 10, 2025. (*Id*.) Once the motion was fully briefed, the parties filed their papers on the Class Action docket. (ECF Nos. 22–26.) CVS Caremark argues Local No. 1's claims must be dismissed because Local No. 1 hired CaremarkPCS Health, LLC to provide it with PBM services, and the parties memorialized their relationship in a Prescription Benefit Services Agreement ("PBSA") that requires Local No. 1 to arbitrate any dispute arising between the parties. (ECF No. 23 at 1; ECF No. 25 at 3; *see* PBSA (ECF No. 24, Ex. 1).) CVS Caremark contends Local No. 1 "agreed to

---

for their prescription drugs because they recognize that PBM formularies drive drug utilization. (*Id*. ¶¶ 7–12.)

4

follow a series of pre-suit notice and mediation procedures before filing any such arbitration" (the "Arbitration Clause"). (ECF No. 23 at 1.)

## II. LEGAL STANDARD

The FAA governs questions of arbitrability in both state and federal courts. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The central purpose of the FAA is to "ensure 'that private agreements to arbitrate are enforced according to their terms.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53–54 (1995) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). The FAA provides "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "a strong federal policy in favor of resolving disputes through arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). "In determining the validity of an arbitration provision, the court applies state contract law." *O'Quinn v. Comcast Corp.*, Civ. A. No. 10-2491, 2010 WL 4932665, at *3 (N.D. Ill. Nov. 29, 2010).

"[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Guidotti v. Legal Helpers Debt. Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Leaders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). A court may properly consider an agreement to arbitrate under Rule 12(b)(6), even where it "is not explicitly mentioned on the face of the complaint" nor "attached as an exhibit to the complaint," "if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the complaint based on a plaintiff's allegations." *Venson v. Pro*

5

*Custom Solar LLC*, Civ. A. No. 19-19227, 2022 WL 4596725, at *6 (D.N.J. Sept. 30, 2022) (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014); *George v. Midland Funding, LLC*, Civ. A. No. 18-15830, 2019 WL 2591163, at *3 (D.N.J. June 25, 2019); *Stacy v. Tata Consultancy Servs., Ltd.*, Civ. A. No. 18-13243, 2019 WL 1233081, at *5 (D.N.J. Mar. 14, 2019)). However, "courts in this District have routinely declined to consider agreements to arbitrate pursuant to Rule 12(b)(6) where the agreement is not directly referenced in the complaint, is not attached to the complaint, and is not integral to or explicitly relied upon in the complaint." *Venson*, 2022 WL 4596725, at *6 (citing *Hubbard v. Comcast Corp.*, Civ. A. No. 18-16090, 2019 WL 2866067, at *2 (D.N.J. July 3, 2019); *Tailor v. Midland Funding, LLC*, Civ. A. No. 18-11320, 2019 WL 494622, at *3 (D.N.J. Feb. 7, 2019), *report and recommendation adopted*, 2019 WL 943520 (D.N.J. Feb. 25, 2019)).

### III. DECISION

Arbitration Defendants contend the parties entered into a valid arbitration agreement which requires the parties to submit the dispute to binding arbitration in Cook County, Illinois, and assert the Court should enforce this provision and dismiss Local No. 1's claims. (ECF No. 23 at 4–7.) Local No. 1 argues the Arbitration Clause is "unenforceable on public policy grounds because the provisions barring incidental, special, consequential, or punitive damages (PBSA ¶¶ 13.6(b), 13.16) could be read to bar treble damages that would be mandatory if Local [No.] 1 succeeds on its antitrust or RICO claims," and because it incorporates American Arbitration Association ("AAA") rules, meaning attorneys' fees are discretionary, rather than mandatory, under the Clayton Act and RICO. (ECF No. 25 at 16.) Arbitration Defendants respond that the Arbitration Clause is not substantively unconscionable, and therefore is enforceable, and Local No. 1's argument fails because it is based on "pure speculation." (ECF No. 26 at 3–4.)

6

"Like other contracts, an arbitration agreement may be invalidated by state law contract defenses such as fraud, duress, or unconscionability." *Calusinski v. Alden-Poplar Creek Rehabilitation & Health Care Ctr.*, 239 N.E.3d 521, 524 (Ill. App. Ct. 2022) (citing *Carter v. SSC Odin Operating Co.*, 976 N.E.2d 344, 350 (Ill. 2012)). Under Illinois law, which both sides agree applies here, "a finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006). An arbitration agreement is substantively unconscionable where "the contract terms are so one-sided that they oppress or unfairly surprise an innocent party and there is an overall imbalance in the obligations and rights imposed by the bargain, as well as significant cost-price disparity." *Id*. (citing *Kinkel v. Cingular Wireless, LLC*, 857 N.E.2d 250, 267 (Ill. 2006)); *see also Fusion Cap. Fund II, LLC v. Millenium Holding Grp., Inc.*, 590 F. Supp. 2d 1055, 1062–63 (N.D. Ill. 2008) ("[C]ontracts are viewed as substantively unconscionable if their 'terms . . . are inordinately one-sided in one party's favor.'" (quoting *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006))). "Procedural unconscionability analysis takes into account the disparity in bargaining power between the parties." *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 754 (N.D. Ill. 2015). An unconscionable arbitration agreement is unenforceable. *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 123 (Ill. App. Ct. 2005).

"Attempts to categorically exclude statutorily granted and statutorily unwaivable forms of relief . . . are void and unenforceable." *Sanchez*, 78 F. Supp. 3d at 756. Indeed, Illinois courts have held "Illinois law precludes limiting remedies available under [Illinois's Consumer Fraud and Deceptive Business Practices Act ("ICFA")]." *Bain v. Airoom, LLC*, 207 N.E.3d 1015, 1024 (Ill. App. Ct. 2022); *see also O'Quinn*, 2010 WL 4932665, at *7 ("Damages limitations are not *per se*

7

unconscionable, however, and, here, the limitation applies 'unless the statute under which [the parties] are suing provides otherwise.'" (second alteration in original)).

The *O'Quinn* court deemed unenforceable an arbitration provision that prohibited punitive damages "unless the statute under which [the parties] are suing provides otherwise" because the plaintiff brought claims under the ICFA, which authorizes punitive damages. 2010 WL 4932665, at *7 (citing *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 882 N.E.2d 157, 179 (Ill. 2008)). Moreover, the court in *Tortoriello* found a similar prohibition on punitive damages unenforceable even when the arbitration agreement did not provide an exception to its limitation on punitive damages. 882 N.E.2d at 179. The Northern District of Illinois similarly found remedial limitations in a franchise agreement, which waived punitive damages and recovery of attorneys' fees and costs as provided for in the Illinois Franchise Disclosure Act, unenforceable. *Sanchez*, 78 F. Supp. 3d at 757; *see also Sanchez v. Alexandra Lozano Immigr. Law PLLC*, Civ. A. No. 23-1028, 2023 WL 4625780, at *6–7 (N.D. Ill. July 19, 2023) (finding arbitration agreement's fee-shifting provision unconscionable because "it undermines a fee-shifting scheme central to the statute which the plaintiff invokes"); *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 931 (N.D. Ill. 2005) (striking arbitration agreement's two-way fee-shifting provisions as unenforceable because it subverted Title VII's fee-shifting scheme); *Brne v. Inspired eLearning*, Civ. A. No. 17-02712, 2017 WL 4263995, *5 (N.D. Ill. Sept 26, 2017) (finding arbitration clause waiving attorneys' fee shifting unconscionable because it contradicted the attorneys' fee-shifting provisions that were essential to the purpose of the statute in question).

More recently, in *Bain*, the Illinois Appellate Court explained the Illinois Supreme Court "has recognized that punitive damages are . . . recoverable under the [ICFA]," which "provides that '[a]ny waiver or modification of the rights, provisions, or remedies of this Act shall be void

8

and unenforceable.'" 207 N.E.3d at 1024 (quoting 815 Ill. Comp. Stat. 505/10c). The *Bain* court relied on case law from the Illinois Supreme Court, wherein the court recognized:

> [I]n consumer fraud cases the attorney fee awards can easily constitute the largest part of a plaintiff's recovery. The legislature realized this when it enacted the fee-shifting provision of the [ICFA]. That provision is premised on the recognition that plaintiffs would be reluctant to seek redress for consumer fraud if the recovery would be nearly or completely consumed by attorney fees and was designed to encourage plaintiffs who have a cause of action to sue even if recovery would be small.

*Id.* at 1024–25 (quoting *Krautsack v. Anderson*, 861 N.E.2d 633, 645 (Ill. 2006)) (alteration in original).

Here, the Arbitration Clause specifically limits the liability of both parties, providing: "[I]n no event, as a result of any such arbitration or otherwise, shall any Party be liable to another Party for payment of any incidental, special, consequential, or punitive[] damages incurred by such other Party." (ECF No. 24, Ex. 1 ¶ 13.16; *see also* ECF No. 24, Ex. 1 ¶ 13.6(b) ("In no event shall either Party be liable to the other for any incidental, special, consequential, or punitive damages as a result of the performance or any default in the performance of their respective obligations under this Agreement.").) At first glance, the Arbitration Clause appears to be neutral in applying the limitation of liability to both parties. However, the PBSA also provides:

> Client [(Local No. 1)] acknowledges that CVS/caremark does not establish AWP or other available industry pricing benchmark methodologies (e.g., "Wholesale Acquisition Costs" or "WAC"), and CVS/caremark shall have no liability to Client arising from the use of the data in the form provided by Medi-Span or any other nationally available reporting service.

(*Id*. ¶ 13.6(c).) In this paragraph, Arbitration Defendants expressly disavow liability for the exact thing forming the basis of Local No. 1's claims. (*Id*.) As the drafter of the Arbitration Clause, Arbitration Defendants limited the liability of both parties, but then, unbeknownst to Local No. 1

9

at the time of signing, expressly disclaimed any claims relating to the pricing of medications—the exact basis of the Insulin Pricing Scheme. At the time Arbitration Defendants and Local No. 1 entered into this agreement, it was April 1, 2015, which is at least six years after the institution of the Insulin Pricing Scheme. (ECF No. 17 ¶ 1.) Accepting Local No. 1's allegations as true, Arbitration Defendants would have had knowledge of the Insulin Pricing Scheme at the time they entered into the Arbitration Clause, meaning they specifically drafted the agreement to disclaim any liability arising from the Insulin Pricing Scheme and limited Local No. 1's ability to recover on its potential claims. *See Peavy v. Skilled Healthcare Grp., Inc.*, 470 P.3d 218, 226 (N.M. 2020) (finding an arbitration agreement substantively unconscionable where the drafting party excluded its likeliest claims from arbitration but forced the non-drafting party to arbitrate its likeliest claims).

This Court finds the Arbitration Clause so one-sided as to render it substantively unenforceable.[6] *See Hwang v. Pathway LaGrange Prop. Owner, LLC*, 260 N.E.3d 99, 108 (Ill. App. Ct. 2024) ("Because the substantive unconscionability analysis turns upon the 'relative

---

[6] Arbitration Defendants argue for the first time in their Reply Brief—in a one-sentence footnote—that the Court should "sever" any substantively unconscionable limitation. (ECF No. 26 at 4 n.2 (citing *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 955 (N.D. Cal. 2021)).) However, "[n]ew arguments in the reply brief are waived." *Rivers v. Nat'l Ass'n of Letter Carriers, Loc. 673*, Civ. A. No. 15-3070, 2016 WL 389983, at *2 (D.N.J. Feb. 1, 2016) (citing *Anspach v. City of Phila.*, 503 F.3d 256, 259 (3d Cir. 2007)); *see also Hilburn v. Dep't of Corr.*, Civ. A. No. 07-6064, 2010 WL 703202, at *11 (D.N.J. Feb. 23, 2010) ("Typically, an argument not raised in an opening brief is waived." (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))); *Zemel v. Korchmar*, Civ. A. No. 20-9972, 2020 WL 6391193, at *3 (D.N.J. Oct. 30, 2020) ("Even if, *arguendo*, [the defendant] is correct in her assertion that Count 6 is duplicative, this is a new argument raised in a reply brief and will not be considered. . . . Thus, . . . the motion to dismiss Count 6 will be denied."); *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 331 n.13 (D. Del. 2009) ("Issues raised for the first time in a reply brief should not be heard." (citing *Laborers' Int'l Union of N. Am., AFL-CIO*, 26 F.3d at 398)); *Valerino v. Hoover*, 643 Fed. App'x 139, 142 n.5 (3d Cir. Mar. 1, 2016) ("[D]istrict courts . . . generally deem arguments made only in reply briefs to be forfeited." (quoting *MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 575 (D.C. Cir. 2010))). Therefore, the Court declines to consider Arbitration Defendants' severability argument on this motion.

fairness of the obligations assumed,' we find that the heavily one-sided nature of the obligation to arbitrate here supports our conclusion that the arbitration agreement is substantively unconscionable." (citation omitted)) Here, the one-sided nature of the Arbitration Clause in addition to the prohibition on special, incidental, consequential, and punitive damages sufficiently indicates to this Court that the Arbitration Defendants were knowingly limiting their liability as to claims stemming from the Insulin Pricing Scheme. Accordingly, this Court finds the Arbitration Clause substantively unconscionable, and therefore, Arbitration Defendants' Motion to Dismiss pursuant to the FAA is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Arbitration Defendants' Rule 12(b)(6) Motion to Dismiss pursuant to the FAA (ECF No. 22) is **DENIED**. An appropriate Order follows.

Date: December 30, 2025

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**